UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOHNY ALBERT CALZADA,

     Petitioner,

                  Case No. 8:13-CV-1486-T-15TGW
                             8:10-CR-545-T-30TGW

UNITED STATES OF AMERICA,

     Respondent.

_____/

O R D E R

    This cause comes on for consideration of Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence and Brief in Support (Cv-D-1; Cr-D-151), and the Government's response in opposition (Cv-D-7).

    By way of background, Petitioner and his co-defendant were charged in a two-count Indictment with conspiracy to possess with the intent to distribute five or more kilograms of cocaine while aboard a vessel subject to the jurisdiction of the United States and possession with the intent to distribute five or more kilograms of cocaine while aboard a vessel subject to the jurisdiction of the United States in violation of 46 U.S.C. §§ 70503(a)(1), 70504(a)(1), 70506(a) and (b), 18 U.S.C. § 2, and 21 U.S.C. § 960(b)(1)(B)(ii). Attorney Julie Thomas was appointed to represent Petitioner in December 2010.

    Petitioner's co-defendant pled guilty on February 16, 2011. On March 17, 2011, Petitioner signed a written plea agreement.

(Cr-D-38.)   On March 25, 2011, Petitioner appeared before U.S. Magistrate Judge Thomas G. Wilson for a change of plea hearing. During the plea colloquy, Petitioner would not admit involvement in the offenses charged, and Magistrate Judge Wilson therefore reinstated Petitioner's plea of not guilty.

Petitioner proceeded to trial on April 4, 2011.  Various law enforcement witnesses and Petitioner's co-defendant testified against him.  Petitioner raised a defense of duress and testified on his own behalf.  On April 7, 2011, a jury found Petitioner guilty of both Counts of the Indictment.  On August 25, 2011, the Court sentenced him to a term of imprisonment of 292 months. Petitioner appealed.  The Eleventh Circuit affirmed his sentence on March 2, 2012.

Petitioner timely filed his § 2255 motion alleging ineffective assistance of counsel.  Petitioner asserts that he was deprived effective assistance of counsel in connection with his guilty plea proceedings based upon counsel's failure to present relevant factors to the Court relating to the Petitioner's competency to enter a plea of guilty.  Petitioner specifically argues: (1) his counsel "denied [him] an opportunity to accept the plea offer by allowing him to attempt to plead guilty when he was on medication and in severe pain, conditions that affected his capacity to understand the proceedings," and (2) failed "to move for a competency hearing prior to trial." (Cv-D-1, p. 10, 11.)  He seeks

to vacate his sentence and start plea proceedings anew.

Attorney Victor Martinez was appointed to represent Petitioner on this matter. The Court held the evidentiary hearing on November 10, 2014. At the hearing, Petitioner testified on his own behalf. Ricardo Arenas and attorney Julie Thomas testified on behalf of the Government.

## TESTIMONY AT THE HEARING

Petitioner Johny Calzada testified that, from the beginning of his criminal case, he told attorney Julie Thomas that he wanted to plead guilty. He recalled that Thomas gave him a written plea agreement. According to Petitioner, the interpreter did not read to him all of the pages of the plea agreement. Upon further questioning, Petitioner testified that the interpreter read the agreement part by part, but Petitioner did not know if he read it all. Petitioner explained that Thomas directed him to initial the bottom of each page and sign the last page.

When asked about the written changes in the plea agreement to the factual basis (GX 1), Petitioner did not recall making any changes. He, however, agreed that the changes were correct and asserted that there was just one go-fast vessel.

Petitioner testified that when he went to the change of plea hearing, he wanted to plead guilty but that he was suffering from medical problems. He claimed that the first thing he did that morning upon being brought into Court was report to Thomas his

3

mental and physical condition.  Petitioner testified that he told Thomas he was "fatigued from his medications and very dizzy, practically intoxicated." According to Petitioner, Thomas told him to answer "yes" or "no" to the questions and everything would go quickly.  Petitioner testified that he could not "rationally understand with clarity what was required" of him and that his medications made him unable to follow questions from the magistrate judge.

Petitioner claimed he was doing his fishing work.  Petitioner also claimed he told Magistrate Judge Wilson he was "not sure they were going to put their drugs on that trip."  Petitioner recalled he told Judge Wilson that he did not call the launches and did not know what the packages contained.  He told Judge Wilson he was merely the captain and drugs were not his.

Petitioner testified that he did not know how he got to trial. He testified that in his meetings after the failed change of plea hearing he continued to advise Thomas that he wanted to plead guilty.  He recalled testifying at trial that he did not know about the drugs and "in his mind [he] was thinking about fishing."  He recalled that he claimed that he could not tell the go fast vessel not to unload the drugs.  When asked by the prosecutor whether his trial testimony was untruthful, Petitioner eventually conceded that he signed a letter indicating that he lied at trial.  (See GX 3.)

Ricardo Arenas, a federally certified English/Spanish court

4

interpreter for the Tampa Division, testified that he has regularly appeared in court since he began working as an interpreter in 2005. Arenas advised that he also provides translation services to English speaking defense attorneys interacting with their Spanish speaking clients.

Arenas recalled that he was the exclusive interpreter for attorney Thomas in Petitioner's criminal case. He recalled meeting with Thomas and Petitioner a "significant" number of times. According to his notes, they met seven times before the change of plea hearing and 16 to 17 times in total.

Arenas, who is from Colombia like Petitioner, recalled that Petitioner and he had no difficulty understanding one another. Arenas recalled that Petitioner complained about pain and the effects of his medications, but Arenas recalled only one occasion when Petitioner was not physically capable of meeting with Thomas. He recalled a second occasion where Petitioner decided during the meeting that he did not feel well enough to continue and the meeting was adjourned. Arenas believed that on all other occasions Petitioner understood what was going on and could participate.

Arenas testified that he read the entire plea agreement to Petitioner. Arenas believed that Petitioner was alert and understood what he was doing when he signed the agreement. He did not recall any portions of the plea agreement that Petitioner did not understand. He recalled that Thomas made the written changes

on the plea agreement to the factual statement regarding the number of go-fast vessels but testified that Petitioner requested the changes.

Arenas was not at the change of plea hearing but went to meet with Thomas and Petitioner three times thereafter to prepare for trial.  He recalled Thomas discussing with Petitioner that as he had not pled guilty they were proceeding to trial.  Arenas recalled translating an April 1, 2011 letter written by Thomas to Petitioner summarizing the events of March 25, 2011 through March 30, 2011. (GX 2.)  Arenas testified that Petitioner repeatedly told Thomas he was not aware of the smuggling operation before he left port.

Arenas recalled meeting with Thomas and Petitioner several times after the trial.  He remembered translating a June 1, 2011 letter from Thomas to Petitioner relating to Thomas' allegation that Petitioner falsely testified at trial.  (GX 3.)  Arenas testified that Petitioner signed the letter admitting that he falsely testified.

Julie Thomas testified regarding her 32-year background as an attorney including her extensive experience in criminal law as a Jag Corp attorney, an Assistant United States Attorney, and Deputy General Counsel for the Federal Bureau of Investigation.  She opened her own practice in late 2009 and practices primarily criminal law.

Thomas explained she was appointed to represent Petitioner on

December 12, 2010.  As she does not speak Spanish and Petitioner did not speak English, she utilized Arenas' interpreter services outside of Court.  Thomas recalled that while Petitioner originally told her he knew nothing of the drug transaction, his statements evolved over time and that eventually he claimed "he was in no position to say no."  Thomas explained that while Petitioner was in pain throughout her representation of him and she tried to get appropriate medical care, there was nothing about him that she observed that led her to believe he did not understand the charges.

She testified that while the case was originally headed towards trial, she secured a written plea agreement and had Arenas translate it to Petitioner at a meeting on March 3, 2011.  At that time, Petitioner still denied any knowledge of the drugs.  They discussed a duress offense, and Thomas obtained Petitioner's measurements for clothes for trial.

At their meeting on March 16, 2011, Thomas had Arenas read the plea agreement to Petitioner again and Petitioner stated he wanted to plead guilty.  Thomas made a couple of changes to the facts as directed by Petitioner, and Petitioner signed the agreement.  When she met with him on March 24, 2011, to prepare for the change of plea hearing, Petitioner acknowledged that he was prepared to plead guilty.  Thomas testified that they discussed his medications and whether they would affect his plea.  Thomas noted that Petitioner was taking Motrin, Ibuprofen, high blood pressure medication, and

an anti-inflammatory.   According to Thomas, Petitioner stated he was ready to go forward.

Thomas believed Petitioner was oriented to time, place and circumstances on March 25, 2011, when he appeared at the change of plea hearing.   She denied that Petitioner told her he was in a substantial amount of pain on that day.   Thomas recalled that, at the change of plea hearing, Petitioner told Magistrate Judge Wilson he only understood some of the plea agreement.   Thomas explained that after Magistrate Judge Wilson offered to have the plea agreement reread to Petitioner and return on another date, Petitioner said he wanted to proceed.   However, Petitioner then claimed he went ahead with the drug transfer because he was in fear of his life and Magistrate Judge Wilson ended the hearing.

After the hearing, Thomas and the assigned Court interpreter met with Petitioner.   Petitioner told Thomas that while it was in his best interest to plead, he could not admit to the facts.

When Thomas visited Petitioner on March 29, 2011 to prepare for trial, he claimed he could not meet due to pain.   Thomas asked the jail clinic to examine Petitioner on an emergency basis and emailed the prosecutor about the possibility of moving for a continuance of the trial.

Thomas recalled that when she returned on March 30, 2011, Petitioner was feeling better and could assist her in preparing for trial.   They discussed that Petitioner continued to insist that he

acquiesced out of fear.  As a result, Thomas told him he would need to proceed to trial and argue duress and lack of knowledge as his defense.  Petitioner agreed.  According to Thomas, he did not tell her he still wanted to plead guilty.

Thomas had Arenas translate an April 1, 2011 letter memorializing their meetings and conversations including Petitioner's position that he was not aware of the drug smuggling operation when he left port.  Thomas explained to Petitioner her concern that the Court would not give a duress instruction without testimony supporting the defense.  Petitioner made the decision to testify.  Thomas believed he was oriented during trial and testified that Petitioner did not indicate he could not proceed.

After trial, Thomas met with Petitioner to discuss the Presentence Investigation Report on May 19, 2011.  Thomas recalled that Petitioner's physical condition had greatly improved and that he was walking.  She further recalled Petitioner was upset about the obstruction of justice enhancement.  He told her other inmates told him he should have cooperated, and Thomas reminded him that was the advice she had given him.  Petitioner claimed he wanted to speak to the law enforcement agents.  He told her he knew about the drugs and was given a $6,000 advance.  Thomas accused him of lying at trial.  According to Thomas, Petitioner said he did not realize what was at stake until he saw the PSI.

Thomas explained that she realized there was an ethical

problem, and after seeking out advice, she wrote the June 1, 2011 letter. She had Arenas translate the letter for Petitioner. Petitioner admitted that he lied at trial.

Thomas admitted that she did not file a motion seeking a competency evaluation or a hearing. She explained that she judged Petitioner's competency based on his presentation to her and that there was only one occasion during her representation of Petitioner on which he was unable to meet with her to assist in his defense.

### THE COURT'S CREDIBILITY FINDINGS

After hearing the testimony of Petitioner, Arenas, and attorney Thomas, observing their demeanor, and taking into account the witnesses' interests in the outcome of these proceedings, the Court finds that Petitioner's testimony, to the extent that it contradicts the testimony of attorney Thomas, is not credible and fully credits the testimony of attorney Thomas. The Court also credits Arenas' testimony

Petitioner's testimony was not credible for various reasons. He presented at the hearing as manipulative and evasive. He claimed not to recall some matters and simply did not answer certain questions asked by the prosecutor.

Additionally, his testimony conflicts with other evidence of record. For instance, while Petitioner claims that he told Thomas from the beginning that he wanted to plead guilty, Thomas notes taken contemporaneously during her meetings with Petitioner

repeatedly contradict his claim.   As an example, Thomas' notes dated January 27, 2011 indicate that Petitioner did not know the go fast boat would come and that he could not resist because the men on the go fast boat were armed and he would have been hurt.  (Cv-9-1, Exh.C-2, p. 26-27.)   Thomas' notes of February 17, 2011 specifically indicated that she discussed a plea offer with Petitioner but he said "how can this be as I knew nothing as to what was happening?" and he did not want to plead.  (Id. at p. 37-38.)

While Petitioner testified that after the failed change of plea hearing, he continued to tell Thomas he wanted to plead guilty, Thomas' notes after the hearing state that Petitioner "simply can't admit he knew" and he "is back to saying it wasn't w/ his consent."  (Id. at p. 50.)  Thomas letter dated April 1, 2011 memorialized their meeting of March 30, 2011 at which Petitioner told her he was not aware of the drug smuggling operation before he left port and that Thomas advised him the Court would not accept a guilty plea based on those facts.  (Id. at p. 61.)   Other notes indicate that Thomas informed Petitioner that the trial was set to begin the following Monday and he needed to make a decision as to whether he would testify.  (Id. at p. 51.)   Those notes indicated Petitioner's defense was that his intention was to fish and that he was unaware of the plan take on drugs and only acquiesced because he thought they would all be killed.  (Id. at p. 52, 58.)

11

While Petitioner claimed that he could not "rationally understand with clarity what was required" of him and that his medications made him unable to follow questions from the Magistrate Judge, the change of plea transcript indicates otherwise. Specifically, Petitioner was able to converse with the Magistrate Judge and give coherent answers to the questions propounded to him. (Cr-D-155.) He raised his own defense that the United States did not have jurisdiction. (<u>Id.</u> at p. 12-13.) He ultimately claimed he had gone to fish and had no knowledge to the drug operation and no ability to stop it. (<u>Id.</u> at p. 13-14.) Magistrate Judge Wilson specifically stated on the record that he did not believe Petitioner. (<u>Id.</u> at p. 14.)

Moreover, Petitioner has admitted that he has been untruthful in the past. Specifically, he admitted to Thomas that he falsely testified at trial on April 6 and 7, 2011. (GX 3.)

On the other hand, attorney Thomas is an experienced attorney who has been practicing criminal law for 32 years. She is a former Federal prosecutor. Her testimony is supported by her contemporaneous notes as well as the testimony of Arenas. There is simply no reason Thomas would not have sought to have a mental evaluation of Petitioner if necessary. Nor is there any reason she would have proceeded to trial if Petitioner had told her he wanted to plead guilty and would admit to the factual basis necessary to do so.

Having assessed the credibility of the witnesses, the Court now turns to Petitioner's claims.

### Ineffective Assistance of Counsel Regarding Competency

Claims of ineffective assistance of counsel require a showing of the two-prong test as set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). In order to succeed under the Strickland test, a movant has the burden of proving: (1) deficient performance by counsel; and (2) prejudice resulting therefrom. Id. at 687.

The first prong of the Strickland test requires the Court to determine whether trial counsel performed below an "objective standard of reasonableness," while viewing counsel's challenged conduct on the facts of the particular case at the time of counsel's conduct. 466 U.S. at 688, 690. Notably, there is a strong presumption that counsel rendered adequate assistance and made all significant decisions with reasonable and competent judgment. Id.

A counsel's performance is deficient if, given all the circumstances, his performance falls outside of accepted professional conduct. Strickland, 466 U.S. at 690. "Judicial scrutiny of counsel's performance must be highly deferential," and "counsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken "might be considered sound trial strategy." Chandler v. United States, 218

F.3d 1305, 1313-14 (11th Cir.2000) (en banc) (quoting Strickland, 466 U.S. at 689 and Darden v. Wainwright, 477 U.S. 168 (1986)). Rather, for counsel's conduct to be unreasonable, a petitioner must show that "no competent counsel would have taken the action that his counsel did take." Chandler, 218 F.3d at 1315.

The Supreme Court has consistently held that "as a matter of law, counsel's conduct ... cannot establish the prejudice required for relief under the second [prong] [o]f the Strickland inquiry." Nix v. Whiteside, 475 U.S. 157, 175 (1986). This admonition emphasizes the stringent requirement that if a petitioner does not satisfy both prongs of the Strickland test, "he will not succeed on an ineffective assistance claim." Zamora v. Dugger, 834 F.2d 956, 958 (11th Cir. 1987). See also Weeks v. Jones, 26 F.3d 1030, 1037 (11th Cir. 1994). Therefore, a court may resolve a claim of ineffective assistance of counsel based solely on lack of prejudice without considering the reasonableness of the attorney's performance. Waters v. Thomas, 46 F.3d 1506, 1510 (11th Cir. 1995) (citing Strickland, 466 U.S. at 697).

With regard to the second prong, the petitioner must show there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, at 694-95. A reasonable probability is a probability "sufficient to undermine confidence in the outcome." Id. at 694. A petitioner must show a "substantial, not just

14

conceivable, likelihood of a different result." _Cullen v. Pinholster_, --- U.S. ----, 131 S.Ct. 1388, 1403 (2011) (citation omitted).

In short, Petitioner contends that on the day he was set to plead guilty he told his counsel he was sick and confused from his medications and was in unbearable pain and that he could not pay attention to the court proceedings. He claims his counsel was ineffective because she failed "to present relevant factors to the Court relating to his competency to enter a plea of guilty." (Cv-D-1, p. 5, 22.) It appears that he claims that his pain and medications rendered him incompetent to understand not only the plea colloquy process but the trial as well. He also argues his counsel should have requested a competency hearing.

It is a fundamental requirement of due process that a defendant be mentally competent upon entering a guilty plea or proceeding to trial. The test for determining a defendant's mental competency is "whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding - and whether he has a rational as well as factual understanding of the proceedings against him." _Dusky v. United States_, 362 U.S. 402 (1960); _Tiller v. Esposito_, 911 F.2d 575, 576 (11th Cir. 1990). The same principles of mental incompetency apply when determining whether drugs render a defendant incompetent. _Williams v. United States_, 443 F.2d 1151, 1154 (11th Cir. 1971). For medication to

15

render a defendant incompetent, the medication must have so impaired his mental faculties that he was "incapable of full understanding and appreciation of the charges against him, of comprehending his constitutional rights, and of realizing the consequences of his plea." United States v. Damon, 191 F.3d 561, 565 (4th Cir. 1999)(quoting United States v. Truglio, 493 F.2d 574, 578 (4th Cir.1974)).

In pertinent part, 18 U.S.C. § 4241(a) provides: "[a]t any time after the commencement of a prosecution for an offense and prior to the sentencing of the defendant ... the defendant ... may file a motion for a hearing to determine the mental competency of the defendant," which the court shall grant "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent." Id. In order to show prejudice resulting from his counsel's failure to move for a competency hearing, Petitioner must show a reasonable probability that he was incompetent at the time of the trial. Futch v. Dugger, 874 F.2d 1483, 1487 (11th Cir.1989); Alexander v. Dugger, 841 F.2d 371, 375 (11th Cir.1988).

Petitioner fails to show either deficient performance or prejudice resulting from his counsel's alleged failure to present factors to the Court relating to his competency to enter a plea of guilty. Contrary to Petitioner's claim, Thomas provided the Court with information relating to Petitioner's condition on numerous

16

occasions prior to his change of plea hearing.   On January 20, 2011, she indicated in a motion to continue trial that Petitioner had been ill since he arrived in the United States.   (Cr-D-15, p. 1.)   In a motion dated February 24, 2011, counsel explained Petitioner's complaints of pain and indicated that she needed more time to review records and determine whether a motion for medical or perhaps mental evaluation was necessary.   (Cr-D-32, p. 1-2.) On March 7, 2011, she filed a motion seeking adequate medical care.  (Cr-D-35.)   Notably, she did not seek a mental evaluation.   The Government advised in a written response that the Pinellas County Jail had been appropriately treating Petitioner for arthritis. (Cr-D- 41.)   Magistrate Judge Wilson addressed the motion at the change of plea hearing and found that the Pinellas County Jail's treatment of Petitioner was adequate.   (Cr-D-155, p. 15.)

Furthermore, Petitioner fails to present any objective evidence showing that he was incompetent at the time of his change of plea hearing or his trial or that a competency hearing was appropriate.   Nor has he shown any prejudice as a result of Thomas' failure to move for a competency hearing.   A competency determination is only required where there is sufficient evidence presented to raise a "bona fide doubt" as to a defendant's competency.   See Pate v. Robinson, 383 U.S. 375, 385 (1966); see also Drope v. Missouri, 420 U.S. 162, 173 (1975).

There is no evidence that Petitioner was suffering from a

17

mental health condition.  His medical records do not include any remarks about Petitioner suffering from a mental condition. Rather, the medical records from June 25, 2011, indicate Petitioner had no suicidal ideation, no abnormal behavior, speech, thinking or psychosis, no signs of a depressed mood, and no treatment by a mental health profession within the last 90 days.  (CR-S-D-14, p. 35-36.)  His health assessment on July 3, 2011, indicated he had no history of suicidal thought, and his psychiatric evaluation was negative.  (Id. at p. 46, 49.)

Nor is there any objective evidence that Petitioner's medication or his pain affected his mental competency such that he was unable to rationally understand the proceedings or assist his counsel in his defense.  Notably, his medical records do not support his claim.  Additionally, Thomas testified that, with the exception of one occasion, Petitioner was able to consult with her, discuss and understand his case, and assist her in his defense. Her testimony is supported by the testimony of Arenas as well as Thomas' contemporaneous notes.

Petitioner's competency at the time of his change of plea hearing, his trial, and sentencing is further supported by his actions during the pendency of his criminal case.  The transcripts do not include any episodes of irrational behavior by Petitioner. Nothing in change of the plea transcript demonstrates that he had difficulty understanding the proceedings or assisting his counsel

in his defense.   In fact, he argued a defense of lack of jurisdiction at his change of plea hearing.   Additionally, the trial transcripts show he had no difficulty testifying on his own behalf at trial over a period of two days.   In fact, the Court described him as a "loquacious witness" having "much to say in response to the questions."   (Cr-D-115, p. 121, l. 22-23.)   As there is no bona fide doubt about his competency at any stage of the proceedings, Petitioner is not entitled to relief.

It is therefore ORDERED that:

1)   Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Cv-D-1; Cr-D-151) is DENIED.

2)   The Clerk is directed to enter judgment in favor of the Government and to CLOSE the civil case.

## CERTIFICATE OF APPEALABILITY AND

## LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Petitioner is not entitled to a certificate of appealability.   A prisoner seeking a motion to vacate has no absolute entitlement to appeal a district court's denial of his petition.   28 U.S.C. § 2253(c)(1).   Rather, a district court must first issue a certificate of appealability (COA).   Id.   "A [COA] may issue … only if the applicant has made a substantial showing of the denial of a constitutional right."   Id. at § 2253(c)(2).   To make such a showing, a petitioner "must

19

demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances. Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

DONE AND ORDERED at Tampa, Florida this *2nd* day of December, 2014.

WILLIAM J. CASTAGNA
SENIOR UNITED STATES DISTRICT JUDGE